UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TIANA NELSON, on behalf of<br>T.N. (a minor) | : | DOCKET NO. 13-CV-3175 |
| VERSUS | : | JUDGE MINALDI |
| U.S. COMMISSIONER OF<br>SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

**I.**
**PROCEDURAL HISTORY**

On January 26, 2012, plaintiff filed an application for supplemental security income ("SSI") on behalf of her minor child, T.N., alleging disability beginning on August 15, 2009. Tr. 71-76. She claimed her child was disabled due to attention deficit hyperactivity disorder (ADHD). Tr. 105. The claim was initially denied on May 25, 2012. Tr. 37-39. Plaintiff requested and was granted an administrative hearing which was held on April 25, 2013. Tr. 231-45. Plaintiff was represented by a non-attorney representative at the hearing.

On August 6, 2013, the Administrative Law Judge ("ALJ") issued an unfavorable decision.

Tr. 10-26. In her decision the ALJ found that T.N. had the severe impairments of ADHD, learning disorder, developmental delay, and asthma. The ALJ determined that the child was not disabled, however, because she did not have an impairment that met, medically equaled, or functionally equaled one of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appendix 1.

Plaintiff filed a request for appellate review of this decision and on September 30, 2013 the Appeals Council denied her request for review. Tr. 4-7. On December 3, 2013 plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## II.
### FACTS AND EVIDENCE

*A. Facts*

T.N. was born on August 23, 2005, and was 7 years old on the date of the hearing. Tr. 71. Based on information provided by plaintiff in the application for benefits, T.N. was enrolled in first grade at Combre-Fondel Elementary School. She was repeating her first grade year because she failed the year before. T.N. is in special education classes and attends counselling for math and reading. Tr. 77-84.

At the administrative hearing, plaintiff testified that T.N. has been treating with Dr. Edgar McCanless monthly since he performed a consultative evaluation for the Social Security Administration. Tr. 239. According to plaintiff, T.N. has seen Dr. McCanless once a month for the past year because she cannot "keep still in school," she is not doing well in school, and the doctor prescribes and adjusts her medication. Tr. 239-40. Plaintiff stated that she does not see any improvement in T.N.'s behavior despite being on ADHD medication for over one year. Tr. 240. She testified that T.N. was treating at Lake Charles Mental Health but she stopped going because plaintiff did not like the psychiatrist. Tr. 241.

When asked what T.N.'s problems in school were, plaintiff replied that she does not keep still, she bites herself, she hits her side on the desk, and she is not "really potty trained." Tr. 242.

### B. *Medical Evidence*

    *1. Children's Clinic of Southwest Louisiana, Edgar E. McCanless, M.D.*

On April 2, 2012, T.N. was examined by Dr. Edgar McCanless at the request of the Social Security Administration. Plaintiff provided the history for the evaluation. She reported that her pregnancy for T.N. was uncomplicated until eight and one-half months when she was thrown out of a moving car. T.N. was delivered in Baton Rouge, Louisiana by cesarean section, weighing four pounds eleven ounces. She had to be resuscitated and was in a coma for fifteen days. Plaintiff stated that she was in a coma for seventeen days. T.N. spent the next six months in NICU and had two seizures while there. Plaintiff stated that T.N.'s development has been delayed but she has not had any serious illnesses. A vision problem was detected at school and T.N. wears glasses. T.N.'s toilet training was delayed until age four and she experiences bouts of enuresis (involuntary urination).

Plaintiff reported that T.N.'s speech is hard to understand and she is receiving speech therapy. She is extremely hyperactive. She will not sit in a chair at school and the school calls plaintiff nearly every day to pick her up. T.N. is eligible for special education classes and will start in the fall. According to plaintiff, the mental health clinic diagnosed T.N. with ADHD and she will start medication next month.

Dr. McCanless noted that T.N. was lying on the floor "spinning around in a circle without any sound" when he entered the exam room. His examination revealed that she could converse and answer questions with clear speech. She sang the alphabet and counted to ten. The physical

examination was normal and he noted that except for the spinning he did not observe any unusual mannerisms.

Following the examination Dr. McCanless' impression was that T.N. suffered brain damage at birth and has been subsequently developmentally delayed. He noted severe behavior and learning problems typical of ADHD with oppositional-defiant features. He opined that T.N. was in need of a medication trial which was being arranged through mental health. Special education help was also needed which would be available in the fall. Tr. 179-80.

On July 12, 2012, T.N. was seen at the Children's Clinic with the chief complaint being "frequent nose bleeds." The notes indicate that she had been prescribed Risperidone and Clonidine but that plaintiff had not been administering the medication properly and plaintiff noted that it was not working. Dr. McCanless adjusted T.N.'s medications. Tr. 174.

T.N. was seen on September 21, 2012, with the complaint that her medications were not working and that she was acting out at school. The prescription Focalin was added to her medications. Tr. 172.

On February 18, 2013, T.N. complained of breathing attacks at night which were resolved with use of a nebulizer, nose bleeds, and that the Focalin was wearing off by noon. Her medications were adjusted. Tr. 171.

The last record from the Children's Clinic is dated April 18, 2013. Plaintiff reported that T.N. was still getting into trouble at school with tantrums and an occasional fight. According to plaintiff, T.N.'s teacher reported that she hit her right side on her desk but no swelling or bruising was noticed. Plaintiff also indicated that she needed a summary for her lawyer for a disability appeal. Her medications were increased. Tr. 168.

On April 19, 2013 Dr. McCanless composed a letter "To whom it may concern" stating that T.N. has a history of brain damage at birth and subsequent developmental delays and severe behavior and learning problems. He stated that she was extremely hyperactive, oppositional, and had autistic features to her behavior. He recommended that she be placed in a self-contained classroom at school all day. Tr. 169.

   2. *Women's Hospital*

Following the hearing, records were requested and received from Women's Hospital in Baton Rouge, Louisiana. These records indicate that T.N. was born on August 23, 2005 by spontaneous vaginal delivery. T.N.'s weight was 5 pounds, 12.9 ounces and there were no abnormalities observed on initial examination. Tr. 223. T.N. scored an 8 (the highest score is a 10) on the APGAR test at one minute after birth and a 9 at five minutes. Tr. 228. Progress notes on August 24, 2005 indicate that T.N. was alert, active in her crib, and was voiding and eating with no problems. Tr. 194. T.N. was discharged after two days, on August 25, 2005. Tr. 214.

   C. *School Board/Educational Records*

School records show that in May of 2012 T.N. underwent a multidisciplinary evaluation. The results of the WISC-IV showed an average full scale score. She received average scores in perceptual reasoning, working memory, and processing speed. She earned a low average score in verbal comprehension. Tr. 147-48. An educational assessment (Woodcock-Johnson-III) showed that her fluency with academic tasks was low average and her ability to apply academic skills was average. Her performance in math calculation was superior and she had average skills in basic reading, math reasoning, and written expression and low average in reading comprehension. Tr. 146. Following this assessment she was classified as developmentally delayed. Tr. 140.

An Individualized Education Program ("IEP") was completed on May 22, 2012.  The IEP provided that T.N. remain in regular classes but with the accommodations that she get preferential seating, small group instruction, additional time to complete tests and assignments, breaks during work periods, and assistance for transitions between classes.  Tr. 133-38.  T.N. was re-evaluated in March 2013 with no significant changes to the IEP.  Tr. 181-87.

### III.
### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.*  (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38

F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## IV.
### LAW AND ANALYSIS

#### A. Burden of Proof

Social security income benefits under Title 42 U.S.C § 1382c(a)(3)(C)(i) are available to children under the age of 18 "if that individual has a medically determinable physical or mental impairment which results in marked and severe function limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The ALJ conducts a three-step analysis as set forth in 20 C.F.R. § 416.924(a) in order to determine if a child under the age of 18 qualifies as disabled. First, the ALJ must determine if the claimant is engaging in substantial gainful activity. If the individual is engaging in substantial gainful activity he or she is not disabled. If the individual is not engaging in substantial gainful activity the ALJ proceeds to the second step.

At step two, the ALJ determines whether the claimant has a medically determinable impairment or a combination of impairments that is severe. A medically determinable impairment or a combination of impairments is not severe if it is a slight abnormality that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the claimant does not have a severe impairment he or she is not disabled. If the claimant does have a severe impairment, the analysis proceeds to step three.

At the third step the ALJ determines whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listed impairment, or that functionally equals the listings, considering the combined effect of all medically determinable impairments, even those that are not severe. In making the determination of whether or not an impairment "functionally equals" the listings at step three, the claimant's functioning must be assessed in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the listings, the claimant's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A limitation is "marked" when it "interferes seriously" with claimant's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A limitation is "extreme" when it interferes "very seriously" with claimant's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). If the claimant an impairment that meets, equals, or functionally equals the listings and it meets the durational requirement, he or she will be found disabled. If the claimant does not have such an impairment, he or she is not disabled. 20 C.F.R. § 416.924(a) and (d).

Here, the ALJ found that T.N. satisfied the first two steps of the analysis; however, at step three the ALJ concluded that she did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1.

### B. *Plaintiff's Claims*

In her appeal plaintiff argues that the ALJ erred in refusing to give controlling weight to the opinion of plaintiff's treating physician, Dr. McCanless. Plaintiff argues that Dr. McCanless' opinion that T.N. should be placed in a self-contained class all day constitutes an "extreme" limitation and this opinion should have been afforded great weight. Plaintiff additionally asserts that the ALJ erred in failing to re-contact Dr. McCanless for clarification of his opinion and in failing to explain the weigh she accorded the treating physician's opinion.

In response, the Commissioner asserts that the ALJ had good cause to discount the opinion of the treating physician based on an inaccurate self-reported medical history and contradictory record evidence. The Commissioner maintains that the ALJ fully explained why she chose not to give controlling weight to the opinion of the treating physician and that substantial evidence supports her finding that T.N. is not disabled.

The ALJ must give a treating physician's opinion "controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence' ". *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir.1995) (quoting 20 C.F.R. § 404.1527(c)(2)). A treating physician's opinion may be given little or no weight "when the evidence supports a contrary conclusion." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000). The ALJ must "always give good reasons ... for the weight [it affords the opinion]", 20 C.F.R. § 404.1527(c)(2), and must show good cause when giving that opinion little or no weight. *Id*. Good cause exists when the physician's evidence is "conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.*

In her opinion, the ALJ stated:

> Dr. McCanless' records from April 2013 indicate that claimant requested a summary of claimant's health status "for disability appeal for lawyer." Dr. McCanless subsequently issued a written recommendation that claimant be placed in self-contained classes "all day." In supporting said recommendation, he indicated a history of brain damage at birth and subsequent development delays and learning problems.
>
> The undersigned has thoroughly considered Dr. McCanless' recommendation and all of his clinical records, which indicate that, after the consultative evaluation, he went on to treat claimant for transient physical complaints and manage prescription ADHD medication. However, as fully described above, the reports of brain damage and birth complications subjectively reported by claimant's mother are in conflict with the hospital records documenting claimant's birth. It appears that Dr. McCanless has not [been] provided with the birth records from Women's Hospital during the period in which he has treated claimant. It further appears that he has not had the opportunity to review school documentation, which includes a comprehensive assessment of the need for special education. As discussed herein, claimant was classified with a developmental delay, but it was determined that the appropriate school placement was a regular classroom setting with specific accommodations. The undersigned finds that Dr. McCanless issued his recommendations in the absence of all relevant historical facts and documentation. Therefore, the opinions he expressed in his written recommendation are not accorded great weight.

Tr. 19. (references omitted). It is evident that the ALJ gave clear, well-stated reasons for refusing to give Dr. McCanless' opinion controlling weight. Plaintiff's argument to the contrary is wholly without merit.

We additionally find that the ALJ properly rejected the opinion for good cause. As previously stated, good cause exists when the physician's opinion is unsupported by clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. Here, the self-reported medical history of "brain damage at birth" is contrary to the record evidence obtained from Women's Hospital previously outlined in this opinion. Furthermore, Dr. McCanless' opinion that T.N. be placed in a self-contained classroom all day is contrary to the recommendation of the School Board. Dr. McCanless' reliance on the subjective medical and educational reports

from T.N.'s mother renders his opinion suspect since the information provided was wholly unsupported by any evidence of record[1].

Finally plaintiff asserts that the ALJ should have re-contacted Dr. McCanless "for clarification whether his opinion would change regarding the child's *current need* for 'a self-contained class all day' despite the 'absence of all historical facts and documentation.' " Doc. 10, p. 5. (emphasis original). The regulation relied on by plaintiff, 20 C.F.R. § 404.1512(e)[2] was removed from the code and replaced with 20 C.F.R. § 404.1520b(c) which now provides:

> (c) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.

---

[1] This court has also considered and wholly rejects the additional evidence in the form of an affidavit from plaintiff's sister Tammy Nelson which was submitted to the Appeals Council. Tr. 7, 128. This evidence is suspect as it was submitted after the ALJ obtained records from Women's Hospital which refuted plaintiff's medical history. In her affidavit she testifies that, following the birth of her niece T.N. and as plaintiff and T.N. were leaving the hospital in Baton Rouge, plaintiff's boyfriend pushed them out of the car. Affiant states that plaintiff and T.N. were taken to Charity Hospital in New Orleans and plaintiff was in a coma for three months and T.N. was in a coma for six months. She goes on to state that the records from Charity Hospital were destroyed due to Hurricane Katrina. Tr. 128. Interestingly, while the affidavit was presumably submitted in order to corroborate plaintiff's medical history, it actually conflicts with plaintiff's statement that she was in a coma for seventeen days and T.N. was in a coma for fifteen days. Perhaps more interestingly T.N. was born August 23, 2005, and Hurricane Katrina made landfall at New Orleans on August 29, 2005. Affiant does not explain how her niece or sister were cared for at Charity Hospital in New Orleans when the hospital sustained severe flood damage as the result of the hurricane and all patients were evacuated therefrom.

[2] 20 C.F.R. § 404.1512(e) previously provided:
(e) *Recontacting medical sources.* When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

> (1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
>
> (2) We may request additional existing records (see § 404.1512);
>
> (3) We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or
>
> (4) We may ask you or others for more information.

This regulation allows the ALJ to determine the best way to resolve any inconsistency or insufficiency. The ALJ may further develop the record by recontacting the treating physician for clarification or additional evidence when there is "insufficient evidence to determine whether [the claimant is] disabled, or the ALJ "cannot reach a conclusion about whether [the claimant is] disabled." *Id.* In this case, the ALJ had sufficient information upon which to base her determination that T.N. was not disabled. We find sufficient evidence supports her determination and plaintiff's argument is without merit.

## V.
### CONCLUSION

Based on the foregoing we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled. It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN**

**(14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers this 27th day of August, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE